The next case is Friedman v. SThree Overseas and Paladine. Thank you, Judge Pooler. Thank you, Your Honor. Can everybody hear me? Yes. May it please the court. My name is Joseph Pace. I'm representing Mr. Friedman in this matter. With the exception of a two-and-a-half-year sojourn in the Netherlands and some schooling in his youth, Mr. Friedman has been a lifelong resident of Connecticut. His family, his friends, his doctor, his job, his home, all of them are in Connecticut. So was it during that two-and-a-half-year sojourn that he brought this lawsuit? That is correct, but at the time that he decided to bring the lawsuit, we introduced evidence that he was actively seeking employment in Connecticut. It's undisputed, for example, that six months before he filed the lawsuit, he stopped seeking employment in Europe. He sent his last email solicitation that he began his negotiations with a Connecticut-based software company in December 2013, which was four months before he filed the lawsuit. We furnished PayPal records showing that he was paid escalating amounts for that work from January 2014 onwards, an employment contract, 24 pages of single-spaced emails in which he documented the detailed patent analysis that he was doing for the Connecticut company. And then when he was asked to deposition, he said he planned on returning to Connecticut by Labor Day because the work was picking up, and that's precisely what he did. Can I ask you to confirm the standard of review for the District Court's reform nonconvenience decision is clear abuse of discretion, correct? Correct. It would be clear abuse of discretion as to findings of fact, but de novo as to law, and we think that the court made legal mistakes by declining to give any weight to any of the post-filing facts, in particular the fact that Mr. Friedman has been in Connecticut for the last seven years. Can we just pause? What do you mean by abuse of discretion as to facts? I guess I'm not familiar with that standard. I'm familiar with clear error review for facts. I suppose what we would say is that this court can conduct a de novo review to the extent that it issues a determination that the court was obligated to consider the facts as of the moment of the filing of the amended complaint. Okay. So one of the subsidiary components of the court's form nonconvenience decision, you're saying if that was infected with a legal error, we would review that component de novo. That is correct, Your Honor. But overall, the determination is reviewed for abuse of discretion, not de novo, correct? That is correct, Your Honor. Okay. So even if there were a legal error with respect to one factor, if the remaining factor is still on balance, tipped sufficiently in favor of the district court's decision, we would still be in a position where we'd have to affirm it, correct? Yes, that would be correct. But of course, we would submit that none of the factors tipped decisively in favor of defendants. I mean, the court said on the issue of deference, the court said none of the post-filing actions were relevant. All that matters is what he did prior to filing. But in the same breath, it credits all of defendants' post-filing facts. It gives more weight to trivialities like Friedman's failure to cancel his bike insurance or a cell phone auto deduction than the fact that he actually returned to Connecticut. Well, didn't he say that when asked during his deposition, who bought your ticket and how did you get your ticket to come back? Didn't he say, I don't remember? Yeah, that's correct. He didn't remember. He doesn't remember who bought their ticket to move from Europe to America. Did the district court really abuse its discretion in finding that, viewing that with a bit of skepticism? With respect, Your Honor, that is one fact of many the court made. The court decided that there was, quote, no credible evidence supporting a desire to move. And as to who bought his ticket, look, he was moving his entire life to the United States. He had to buy new furniture. He had to renew his license. He had to cancel all of his utility bills. And so the detail of who paid for a $400 or $500 ticket, at the time, it slipped his mind. But we submitted that… And let me just pause there. The district court wasn't required to make the factual finding that it slipped his mind, right? I mean, now it seems to me we're in factual finding land about whether your client was credible. And it is very difficult. I mean, a clear error finding is about as powerful as compound interest in terms of the laws of the universe, in terms of difficulty of undoing, right? Your Honor, it's a high bar to be sure, but there was uncontested evidence that at the time he was engaged in good faith negotiations with the Connecticut-based software firm. And even if it were the case, I mean, we submit that there is an enormous body of evidence that credibly shows he intended to return. But even if this court were skeptical that he intended to return, the fact is he's in Connecticut now, and he's been there for the past seven years. He's not set foot in Europe. And that means I think the best case scenario is that if this order is affirmed, Friedman would have to return to the Netherlands for the first time in nearly a decade. But in reality, an affirmance is tantamount to dismissal with prejudice. The Netherlands doesn't permit contingency arrangements, and he doesn't have the resources to hire foreign counsel and start again. And given that foreign nonconvenience is about weighing relative inconveniences, and given that defendants have to show oppressiveness and vexation all out of proportion to plaintiff's convenience, the lower court was at least obligated to consider the fact that dismissal would impose case-ending inconveniences on Mr. Friedman. But in fact... But wouldn't affirming the district court or reversing the district court, wouldn't that put a burden on every other party in this lawsuit? Your Honor, defendants... With respect to defendants' claims of burden, there are a multibillion-dollar entity with a fleet of corporate law firms that have been litigating their interests across the world. The additional burdens of litigating in this case, for them, it's barely a rounding error on their sheets. So rich people, we don't count their interests? It's not that you don't count the interests, but the Second Circuit has explicitly said that when you have a David and Goliath-like situation, you have to weigh the relative inconveniences. And somebody who has limited resources, such as Friedman, who was on the verge of bankruptcy, his conveniences have to be treated with a greater degree of consideration than a multibillion-dollar corporation that says that it would be put out by having to litigate in another forum. You also argue that the district court failed to give sufficient weight to Connecticut's interest in the suit. Could you speak to that a little bit? Yeah. So, Your Honor, on that particular issue, this would maybe be a more difficult case if Friedman had been recruited while living in Texas and then moved to Connecticut after being in Paladine. But the defendants,  were not allowed to move abroad. He left his job prospects in that state, lost his home in that state. And so Connecticut has an obvious interest in protecting its financial talent from being lured out of the state by fraud. Since I only have 90 seconds left, I'd like to briefly pivot to sanctions. There are a few points I'd like to emphasize. Sanctioning counsel is an extremely serious matter, and here's the crux of the problem. Prior to the September 15th, 2017 order, the court never gave any hint that it was actually going to impose sanctions on counsel. In October 2016, it imposed sanctions exclusively on Mr. Friedman. And on May 17th of the following year, it issues an order to show cause as to why the daily sanctions shouldn't be increased again. Counsel, aren't your interests when you take this topic up adverse to your clients? He should have his own attorney on the sanctions issue, shouldn't he? Well, Your Honor, I can say a couple of points to that. One is I've spoken to the client. The client has read the briefing, and the client has agreed to waive any conflict. But to the extent the court is still concerned about that matter, if this were remanded with instructions for the district court to consider Mr. Kaufman's objections, he would be represented by his own counsel. Can I ask you about the premise of one of your arguments now that counsel was not on notice? You just said that counsel was not on notice that he could have been liable for the sanctions. Is that what you said? That's correct. The only indication... Well, hang on. So let me just ask you this. Wasn't it true that in December of 2016, somewhere nine months earlier, the defendants moved to hold Friedman's attorney jointly and severally liable for all sanctions? So there was a motion pending on the docket, and you're saying that the attorneys were not aware that this is something that could happen when there was a pending motion from a party asking the court to do something? There was no indication from the court that she was actually considering it. Wasn't that generally how it works? A party moves for something, and you don't know how the judge is going to rule until the judge rules. Mr. Kaufman was expecting that at a minimum, the judge would issue an order to show cause instead of issuing a sua sponte order that said, you know, we're going to retroactively apply... How do you use the word sua sponte there? When a judge rules on a motion, how is that sua sponte? Isn't that the party's sponte? Well, the context is that the request was made on December 23rd, and then what follows is about nine months of back and forth about discovery, including a hearing in which the judge said, I'm not going to hear our... ...it and see approach. And so the expectation was that if she was going to consider it, that she would give Mr. Friedman an opportunity to respond, at least issue an order to show cause. But by the time she says, you know what, that ruling in October 2016, that applies to you, then the only thing Mr. Kaufman can do is file objections. Now he's subject to a clearly erroneous standard, which is a pretty severe handicap to place on counsel with due process. Thank you. Go ahead. Well, I guess just to ask one more time there, I guess after the sanctions order, didn't Friedman move twice for additional time to file objections and then they rolled in late? Yes. So they missed the deadline set by the court to raise the objections and isn't a failure to comply with a scheduling order on an adequate basis for a district court to deny an objection? Actually, Your Honor, I'm actually really glad that you asked that question because this was addressed in a paragraph in our brief that was inadvertently omitted. It's true that he missed the deadline, but the objection waiver rule, this court has explicitly said, is non-jurisdictional and it can be excused by the court. Now, Judge Thompson excused the late filing of the objections because what happened in that order was the objections were late because they should have been filed a year prior. Okay. Thank you. Thank you, Your Honor. Thank you. We'll hear from your adversaries. Good morning, Your Honor. It's Derek Adler for the Paladine and related defendants. The district court here did exactly what it was supposed to do. It followed the three-part test and it looked at each of the relevant factors for each prong of that test. The court's determination for each element was supported by substantial evidence that had been developed after extensive jurisdictional discovery, including deposing all of the relevant parties. And the district court's balancing of the relevant elements was more than reasonable. What, as I think Your Honors have already honed in on, what Mr. Friedman is mainly concerned about is the credibility of the plaintiff's own statements on certain elements. But the record shows that the district court had very good reasons for determining that Mr. Friedman was not credible. He was repeatedly caught misrepresenting jurisdictional facts to his adversaries and to the court.  nowhere near a showing of clear abuse of discretion or clear error in the findings of facts. Counsel, you heard a Post-it Counsel's answer about the burden on you and your co-defendant. Isn't it true that you litigate all over the world and Connecticut is part of the world? Your Honor, it's really not true. Speaking for the Paladine defendants, Paladine is strictly a Dutch entity. It's had litigation in the Cayman Islands regarding certain entities that are managed, that are Libyan entities. It has no litigation in the United States other than this. And it's not, there's a kind of a contradiction here because actually the essence of his complaint is that Paladine was kind of a sham company that didn't really have a business. So it's pretty funny for him to come and say now, well, there's some huge multinational. They're not. They're a Dutch hedge fund that manages assets for Middle Eastern clients, primarily Libya. And yes, they presumably have more resources than Mr. Friedman does. But when he brought this lawsuit, he was sitting in Amsterdam. He was sitting at his own residence in Amsterdam and he brought an action in Connecticut against parties that were all in the Netherlands, almost all in the Netherlands with one or two exceptions there. So, I mean, in relation to that first part of the test, the degree of deference. So the court, as your honors know, concluded that less deference was appropriate here based on all the factors relating to convenience and to foreign shopping that this court has articulated. That's notable by the way that plaintiff and his counsel actually started their credibility issues. In this case, their original complaint actually represented that plaintiff was residing in Connecticut already in March of 2014. That was alleged in the complaint and that was wrong, as they later admitted. During the two years prior to the lawsuit, Mr. Kaufman did, excuse me, Mr. Friedman did everything that you would do if you were planning to stay in the Netherlands indefinitely. He sold his house and his car in Connecticut. He let his driver's license expire, got the necessary residence permit, social security number, looked for jobs in the Netherlands, took Dutch language classes, abandoned his U.S. credit cards and bank accounts. Counsel, I'm sorry to interrupt and I understand your argument. Could you please respond though to your opponent's legal point that once we have an amended complaint, we in effect need to look at the situation as it stands at that moment. There's a certain amount of force to that argument, right? We don't then go back and look at the allegations of the original complaint. So why should we look at the state of the facts for foreign nonconvenience at the time of the original complaint? Why shouldn't we look at everything as we normally do at the state of play at the time that the amended complaint was filed? And I understand there seems to be no case law at all, but given that, why not? Well, the answer actually that the court did address this in the Fredrickson case, the Fredrickson versus Textron case, where what the court, what the Second Circuit held is that it's just for the first step of the analysis, for the question of the degree of deference to the plaintiff's choice of forum that you look at the time the original complaint was filed. The facts as they were on the ground because you're focusing on the reasons whether the plaintiff had good reasons for choosing the forum he chose, so naturally you focus at the time he chose that forum, which is in March of 2014 here. But I agree with you and I think it's probably true under this court's precedence that in relation to, for example, access to sources of evidence and proof and evidence and things like that, if the amended complaint radically changed the nature of the claims and the nature of the evidence that was necessary to prove or defend against those claims, then certainly I would agree that the court should look at that as of the time of the amended complaint. In fact, looking at district court decisions, the district courts in the Second Circuit find that you can actually bring a forum non-convenience motion any time. You can bring one rather late in a proceeding when the facts that make a forum inconvenient arise. But in terms of the degree of deference the court held in Fredrickson, that that's decided in reference to a distinct point in time. And the quote is, for Step 1 purposes, that point is the time when the complaint is filed. That's in the Textron case at page 612. I see that my time is up. Unless there are any other questions, I'll conclude. Thank you, Mr. Adler. Good morning, Your Honors. May it please the court. My name is Annika Lasley, and I am here on behalf of the S3 parties. I'd like to start where Mr. Adler left  And the point I'd like to make in terms of the deference determination and the timing of that deference determination is that the deference determination is in fact properly made at the time that the original complaint is filed. And that's because the point of deference factors is to determine whether the plaintiff chose the forum for reasons of convenience or for forum shopping. And the plaintiff only makes that choice once. And it makes that choice when it files the original complaint. And so the court did in fact look and apply deference at the appropriate time. Are you representing the multi-billion dollar companies that litigate all over the world? I am not your honor. That was I believe a reference to the Paladine defendants. The Paladine defendants when I asked them just denied that they litigate all over the world. So I assume it must be you. S3 does not litigate all over the world. First of all, the S3 parties involved would have been the individual S3 defendants and her employer which is S3 PLC which is a multi-billion dollar company, your honor. Thank you. Going back to the deference issue and the timing of that, the court also did consider the plaintiff's intent and looked at whether or not when the plaintiff filed his original complaint, whether the plaintiff had any intent to move the case, he had no evidence that he intended to move. That we would review for clear error. The only legal argument that's being pressed in this particular point is it was an error of law not to look at post first complaint filing factors to look only at that point in time and not a later point in time. Can I ask one other question about that? I'm not saying I disagree with your point but if we disagreed with you as to that legal determination would that necessitate the district court looking at it again or would changing the level of deference would not make any difference in this case? As Mr. Adler pointed out the court considered all three factors and the court found that the Netherlands wasn't adequate for him. The court properly balanced the private and public interest factors and ultimately determined that those factors were  erroneous and the court strongly weighed in favor of litigating this action in the Netherlands. If this court ultimately determined that one of the factual determinations was clearly erroneous or if this court ultimately determined that the district court was erroneous and should have analyzed deference as of the time that the amended complaint was filed, the  determination or ultimate conclusion in this case can and should stand. The other thing I want to address regarding the appellant's argument in this case goes to the  the appellant in fact has not appealed the sanctions order. His counsel has only appealed it as to himself, which we believe is questionable and suspect. But I also want to point out here that the underlying sanctions order, the appellant never objected to the sanctions   appellant has had numerous times of potential consequences for his failure to comply with the various discovery obligations. And so in addition to the fact that the paladine defendants on December 23rd filed a motion to have the sanctions order apply to Mr. Kaufman and that Mr. Kaufman be held jointly and severally liable for the sanctions. And Mr. Kaufman therefore had an opportunity to oppose that motion, which he chose not to do. He was also fairly warned by the magistrate judge numerous times throughout the case that his discovery violations could result in potential consequences to him directly. And so there is no due process issue with regard to that. And so unless there are any additional questions, I realize that my time is ticking down. But we would request that this court affirm the district court's decision dismissing this case on the grounds of form nonconvenience. Thank you, Ms. Lasley. We'll hear rebuttal. Your Honor, just to address the issue of litigating across jurisdictions, they seem to pretend like they're small fry entities. On page 42 of our brief, we identify their revenues as in excess of $1.5 billion. And we're assuming that they lawyered up in all of those jurisdictions. As to the credibility determinations, they are correct. We should have said domicile because as a legal matter his domicile was still Connecticut because he planned on returning. At the time, we knew he was planning on returning. They have not attacked the credibility of the negotiations with the Connecticut-based company and they can't attack the fact that he has been living in Connecticut uninterrupted for the past nine years. Now, they say you shouldn't consider that because of Friedrichson. Friedrichson did not say that the plaintiff chooses a form for valid reasons and the defendant subsequently does something unexpected like consent to jurisdiction abroad, the court will not withdraw deference to the plaintiff's choice of form. That decision never said that the court would put epistemological blinders on as to the reality of where the plaintiff is living in that moment in time. Now, they bring up the fact that he sold his car, he got a residency permit, he got a social security number. All of those things are things that you have to do to have a job in Europe. So they cannot possibly help us ascertain what his intent was in March 2014. Didn't he sell his house in Connecticut council? Yeah, he did. His house was going into foreclosure because he wanted to    Did he sell his house in the Netherlands? No, he did not. He sold it after he was fired from Paladine. I believe he sold it in 2013. He states in his deposition that the reason he was searching for employment in Europe was because he recognized that he was unhireable in the United States. He wanted to get an income. He focused on the European market specifically so he could keep his house. The last point, I would like to address something real quick about him being warned that he could be sanctioned. The court never issued a show cause that articulated the precise reasons he was going to be sanctioned. It wasn't until 2017 that the court said everything I said a year ago